KEATING, by Guardian *ad litem,* and another, Appellants, vs. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Respondent.

*November 7—December 4, 1956.*

For the appellants there was a brief by *Fett & Murphy* of Janesville, and oral argument by *Raymond C. Fett* and by *Patrick J. Rude* of Milwaukee.

For the respondent there was a brief by *Moss & Wickhem* of Janesville, and *E. H. Borgelt, J. R. Walker,* and *Kurt H. Frauen,* all of Milwaukee, and oral argument by *John C. Wickhem.*

BROADFOOT, J. Upon this appeal the plaintiffs contend that there were issues of fact to be determined by a jury. It is their first contention that the warning sign south of the track was inadequate and in a poorly kept condition. The record reveals that the customary crossbuck sign bearing the words "Railroad Crossing" was standing on the east side of the street approximately eight or nine feet south of the railroad track. There was no street light at this point on Beloit avenue and it is contended that under the circumstances this single crossbuck located so near to the track was inadequate to warn drivers approaching on the street of the presence of the track. The track was a spur track, not used by regular trains, but was used mainly for hauling empty cars to the gravel company and returning loaded cars. Normally only one trip was made in each direction each night. Several photographs were introduced in evidence, some of which were taken by the police shortly after the accident, and some taken by commercial photographers approximately twelve hours after the accident. These photographs demonstrate that the crossbuck complied with the provisions of sec. 192.29 (5), Stats. A finding otherwise by a jury could not be sustained.

As to the contention that it was in a poorly kept condition, we can only say that the photographs reveal that the letters are discernible and it cannot be successfully claimed that it was maintained in a poor condition. It was stipulated that neither the public service commission of Wisconsin nor its predecessor had ever issued any order in connection with this railroad crossing, and no violation of any such order is involved in this case.

The plaintiffs next contend that the Railroad Company was negligent because the whistle was not blown at any time as the train approached the street nor as it was crossing the street prior to the accident. The record establishes that to be a fact. The record further establishes that a bell upon the engine was kept ringing by an automatic device. The trial court stated that the purpose of a signal by means of a bell or whistle is to warn travelers upon a highway of the approach of a train. That is the holding of this court in prior cases. As the train approached the crossing the bell was ringing. It approached the crossing at a speed of one or two miles per hour. The engineer observed cars approaching from the south. They were perhaps a mile away when he first observed them. He directed his fireman to light and place a fusee upon the highway that was timed to burn for ten minutes, during which period he expected that the train would have crossed the street. The trial court held that this was adequate warning of the approach and presence of the train, and we must agree. There is nothing in the record that would have supported a jury verdict to the contrary.

It is next contended by the plaintiffs that the railroad was negligent in that the fireman placed the fusee upon the north side of the tracks when the only cars in sight were approaching from the south. Our attention is not called to any regulation or law requiring a railroad to give warning of the presence of a train on a crossing at night by placing a fusee or flare. Further, there is uncontradicted testimony in the

record that the light from the fusee as placed was of such intensity that it showed above the cars and beneath them, so that the train would be clearly visible to a traveler approaching on the street from the south. The engineer testified that he watched the approaching car up until the time it struck the center gondola of the five that he was moving. He immediately applied his emergency brakes. At that time the engine was approximately 150 feet west of the crossing. He informed the fireman that a car had struck the train and the fireman immediately descended from the cab on the south side of the train and ran back to the street. It was his undisputed testimony that the flare on the north side of the train lighted up the south side of the train sufficiently so that he was able to run to the car, which was clearly visible, and even to see to some extent into the interior thereof without the aid of a lantern or other light. In addition to the flare or fusee, it should be noted that the tender was equipped with a headlight which faced to the west and the engine itself was equipped with a headlight faced to the east. This headlight was located slightly more than 12 feet above the rails so that it was shining to the east and above the loaded gondolas. Thus the record fails to disclose any testimony that would support a jury verdict that the defendant, through its employees, was negligent in placing the fusee on the north side of the spur track rather than on the south side.

The trial court directed the verdict in favor of the defendant for the reason that no negligence on the part of the Railroad Company appears in the record. We agree with that finding. However, the defendant pleaded contributory negligence on the part of the driver as a defense. If any negligence on the part of the Railroad Company had been shown, it would be necessary to find, upon the record, that the deceased was causally negligent as a matter of law and that his negligence was equal to or greater than any negligence on the part of the Railroad Company or its employees. Accordingly the

granting of the motion for a directed verdict must be sustained.

*By the Court.*—Judgment affirmed.